The next case is United States v. Robert E. Miller III. Mr. Sorensen. Thank you, Your Honor. May it please the Court, my name is Quinn Sorensen. I represent the defendant in this matter, Robert Miller. I'd like to reserve three minutes for rebuttal, if I may. Granted. Thank you, Your Honor. Ownership of property is probative but not sufficient, as this Court has held on a number of occasions, to prove knowing possession of illicit or unlawful materials found within the property. That is especially true in the context of computers, which may house thousands, millions, billions of files, many if not most of which will never be seen by the typical user, and many if not most of which will even be inaccessible. Is the standard the same on receipt and possession? If domain and control, does that apply to both? It does. The difference is between receipt and possession, and this Court's case has made that clear, that receipt does involve different considerations than possession. But if receipt is shown, essentially what the Court has said, possession is shown, but not necessarily vice versa. But I think under either standard, in this particular case, you don't have sufficient evidence of knowing possession to establish either receipt or control. And that is under several of the factors that have been considered by this Court in determining whether files are knowingly possessed by a defendant. And what are those factors? There's a number of factors, and they all get to this question of whether the defendant knew of the files. But to go through some of the relevant factors and considerations that this Court has considered in the past, it's whether the files at issue are readily, uniquely, or obviously available to the defendant, whether there is evidence that the defendant was actually involved in the creation or accessing the files at any point in time, and whether the defendant had a history of utilizing, accessing websites of this sort or obtaining files. What cases do you get those factors from? Well, if you look at some of the cases that were cited in the briefs in this case, United States v. Fritz goes into this a little bit, and it refers back to actually a case defined as United States v. Franz. I can give you the citation. Franz wasn't cited, though, right, by either side? It was in Fritz as well, Your Honor. And Miller is another case that was cited. I can provide you with that citation, too. Was Miller cited? It was not, but it was. So I was so puzzled because I thought initially when I read the briefs, I thought, wow, I'm surprised we're plotting new ground. And then through our own research, we find Miller and Franz, which appear to be rather on point. Or do you disagree that they're on point? Well, I think they're on point in the sense that they are considering similar issues. But I think under all of these cases, and that includes Moreland, I. Affiliates, which is a gun possession case, but all of these go into the same essential question, and that is whether there is any affirmative evidence that the defendant in this case, whether or not they possessed and owned the property overall, whether it be a car or a computer, whether they had knowledge of the particular materials that were found. And all of the factors that are considered in these child pornography cases involving computers are really addressing that particular question. But aren't you sort of spelling out a situation where you're saying that the government hasn't ruled out every possibility of innocence here, that the government can prove guilt beyond a reasonable doubt, and that doesn't mean they have to rule out every possible conclusion that the defendant is not guilty, and especially in circumstantial cases, which this is, it's strictly a circumstantial case built one pillar upon the other. And it's true, there may be situations where a jury could say this defendant was not guilty, but was it unreasonable for a jury to vote that there are sufficient facts to find that he was using pornography, especially since we have this as an ethnic case. This is an ethnic case. I'm afraid no. This is not an ethnic case. This is a direct case. Okay, it's not an ethnic case. It has nothing to do with ethnic, but it is a situation where you're asking us to rule out every possibility of it being a not guilty case. No, I'm not, Your Honor, and I don't wish to make that the point. This is not a situation in which I'm arguing that the prosecution must necessarily exclude every possible option by which there might be another alternative explanation, but what the prosecution must do, and this is established by cases, again, ranging from Miller, the cases we were just discussing, police, gun possession cases. Property ownership alone is not sufficient to prove that the defendant had knowledge of everything that was within the property, and that was, again, the gun was in the back of the truck. Why would we talk about guns when we have two precedential opinions involving child pornography and technology? That's fine. We can absolutely discuss those because the only reason we would discuss them Now we have to discuss them even though neither side briefed them. Well, because in all of these cases, in possession cases of this sort, regardless of whether it's a computer or a truck, the actual substantive analysis is the same. Knowing possession requires some link between the defendant and knowledge of the particular material. Right. And maybe there's a link here in the sense that Mr. Miller owned the laptop in question, right? Quite right. That is exactly the link, and that is But we don't know whether maybe someone else in his, he was rooming with others. Maybe the others looked at it. That's the argument, but the jury didn't buy that, though, right? No, I don't think that, well, the jury made its ruling, and, of course, it's verdict standard. And, of course, you look at the evidence in the light most favorable to the prosecution. I would not dispute that. But what is the case here is what this court is under consideration is whether there was actually any evidence, sufficient evidence linking and showing, that Mr. Miller actually knew of or had any involvement with the actual files that were with the computer. Can I ask a question about the files? Because I didn't find anywhere in the record the file names in Exhibits 10 and 24 that were admitted at trial. Do you happen to? There is a, there are lists, and they are in, the video list is at Appendix 314 to 20, and there is also an actual image list and an animated image list, and those appear at Appendix 321 to 33, Your Honor. Thank you. No, you're quite welcome, Your Honor. And going into those file systems, that is one of the pieces of evidence here that is relevant in this consideration. You look at those files, and, in fact, the directories under which they are listed, and nothing in their names, nothing in the directory systems in which they are embedded, suggests that they are child pornography. Rather, the names themselves are rather random combinations of letters. They were in unallocated space. Many of them were, and that's my next point, Your Honor. That is, unallocated space is something in which an area of the computer in which temporary deleted files are stored. They do not even appear in the directory system, and they are inaccessible to a standard user without special software. How do they get into unallocated space? There can be two ways, generally, as far as my understanding, which is, one, you can, in fact, if somebody happens to, or a program that is running on the computer happens to come across a download, a photo of this type and automatically downloads a temporary version of it, it doesn't matter whether it's seen by the user or not. It may get put in this unallocated space. The other way, and the more common way, I suppose, for most people, is if something is downloaded on the computer and then deleted, either by user action or by the operation of the system, it goes into that. Couldn't it have been the latter? In terms of somebody deleting it, it certainly could have been that way, Your Honor, and that may have been the case, but that still does not show that Mr. Miller was the one who downloaded it. It could have been Mr. Sprankle, right? It certainly could have been Mr. Sprankle. Now, at page 5 of your brief, you claim that Miller's roommates testified, in fact, that they had seen Sprankle in possession of and viewing child pornography on his own computer, correct? I believe it was defined as child pornography in the closing statements, Your Honor. I'm not sure if it was in the testimony itself, yes. All right, but the appendix citation attached to that, I don't see any support for that. Can you point to where either roommate testified that Sprankle possessed or viewed child pornography? No, and it was not described as child pornography in that. It was described as child pornography in some of the closing and in the post-trial motion, Your Honor. So that's a misstatement, then. And, again, I think that was clarified in the reply brief, so I apologize if I stated it otherwise and referred to the appendix in that. But there is evidence that Mr. Sprankle had engaged in illicit conduct in terms of possibly stealing phones and illicit photographs from his workplace. He had hacked into a roommate's computer system to upload pornography of some sort, at the very least. And that is getting to the point that, and it's not a question here of whether Mr. Sprankle is or was not responsible for the images within Mr. Miller's computer, necessarily. That is merely to show that there was no evidence, really, insufficient evidence, that Mr. Miller was. And this is actually confirmed by a point, going to your point, Judge Sirica, with respect to who created this pornography and how did it end up on the hard drive. And there was really insufficient evidence in this case that the hard drive on which these files were downloaded was, in fact, the same hard drive that was in Mr. Miller's laptop at the time the government alleges that these files were created. And this is clear from a few pieces of evidence that are referenced in the briefs, but maybe this point wasn't drawn out enough, which is why I want to bring it up here. And that is starting with Detective Baker's testimony. He was a gentleman who did the forensic analysis on the laptop, who pulled the hard drive from the laptop. He acknowledged upon questioning, and this is at page 65 of the appendix, that he was unsure whether the hard drive he pulled from the laptop was the same one that had been in the laptop throughout Mr. Miller's ownership of it. And he said he had not tested it, even though he could have, to see whether it had been replaced or refurbished. That is important because if you go forward to Mr. Kaur's testimony, Ryan Kaur's testimony, that is Mr. Miller's roommate, he said, and this is appendix 88 of his testimony, that in 2013, early to mid, Mr. Miller had experienced a hard drive malfunction in his laptop. He had at that point submitted the laptop to a warranty center, which replaced the hard drive in 2013. Sent it back to Mr. Miller, who used it for a number of months before he got a desktop, which became his primary computer system. This evidence, this testimony is corroborated and confirmed by records of Internet usage actually introduced by the government. This appears at 345 of the appendix. Internet history, this is Mr. Miller's Internet usage, and it starts in May 2013. And it ends in late May, or July 2013. So here we have all of this evidence, not only suggests, but in my mind, confirms that in 2013, the hard drive was replaced. Mr. Miller then started using it for a few months, at which time he got a new computer. And it's all important because the government itself alleges that the downloads in this case, the files, were downloaded from 2008 to 2013, meaning that the hard drive on which those files were downloaded was not even in Mr. Miller's laptop when these files were downloaded. And then the question becomes whether he can be shown to have accessed or known of those files after that. And there is really no evidence that he did so. No evidence that he ever accessed the files. No evidence that he should have known about the files. And that is really of compelling evidence that the evidence here was plainly insufficient to show that Mr. Miller had any involvement whatsoever with the files in this particular case. Well, the government presented evidence that roommates never saw the laptop outside of Mr. Miller's presence. Quite right, Your Honor. But the fact that they never saw the laptop outside of Mr. Miller's presence doesn't mean that Mr. Miller had any involvement or knew of all the files on that, particularly since he hadn't been using the laptop. And that's uncontradicted evidence after 2013. It had been basically in a closet after that point. They never saw him with it. But they never said that they didn't know that nobody else used it. In fact, they admitted everybody went in and out of rooms. There were no locks on the doors. People could have accessed the laptop. No one ever saw anyone in his bedroom without Mr. Miller's was there. I think that was a testimony. But they also clarified that they did not know whether anybody could have gone in there. People were inside and outside of the apartment at times. That's could have. But they said they never witnessed anyone that was there when Mr. Miller was not present. Certainly. But again, they never nobody ever testified that they saw Mr. Miller access the laptop while in the apartment or access these files. And he had no history of doing so. Your position is this shouldn't have been submitted to a jury, but there was not sufficient evidence for a jury to circumstantially find that. So that so that we have a jury question here. Well, there was no jury question here. I agree with that, Your Honor. This should not have been submitted to the jury. The judgment of acquittal should have been granted at the close of the government's case in chief. Should have been granted thereafter. And at the very least, a judgment of acquittal should have been granted afterwards. And that judgment should not be reversed by this court. But there are other Miller factors to support the verdict, aren't there? I mean, if we go. But I guess what's kind of interesting, I think, is that some of these Miller factors don't really help us with possession. Exactly. Most of them go. They don't answer the who. They answer the what. Exactly. But so really, the who comes down to ownership. That's that's really all the government had here. It's there. The government's sort of coup de gras was this is Mr. Miller's computer. And you won't hear any testimony that his roommates were in the habit of, you know, borrowing or, you know, otherwise jumping on his computer and doing this. Is that really what is it that sort of binary? That's exactly what I view the government's position as in this case. And that's viewed on page 15 and 16 of their brief. Why is that sufficient? Well, there's two reasons why it's it's adequate for that reason. One, there was no definite there was no clear evidence that nobody else had access to the laptop at all. In fact, as again, while Mr. Miller was out of the apartment, while others other. But I guess it's a follow up on Judge Cowen's position. It's it. You've heard the adage possession is nine tenths of the law. Your argument here seems to be possession is one tenth of the law. No, Your Honor. Because they get possession. I mean, it's it's his computer. He owns it. That's where the the child pornography was found. Understood, Your Honor. And I agree fully that this is very relevant. Ownership is very relevant in determining possession. But it is not itself sufficient to prove possession, especially files. Why? Why not? Certainly not sufficient as a matter of direct evidence. Absolutely not sufficient. But but, you know, I saw it as a trial judge. And you certainly see it in your line of work. People get convicted every day of the week on purely circumstantial cases, do they not? Exactly. And in fact, there's a jury instruction, as I recall, that I always thought it was interesting. The model jury instructions, the judge tells the jurors that circumstantial evidence is no less important or valuable than direct evidence. Right. Even better. Doesn't lie. Doesn't lie. That is quite true, Your Honor. That is indeed as important as direct evidence. But in this particular circumstance, there has to be circumstantial evidence beyond mere ownership of the computer. If nothing happened here, no one ever saw anyone in there without Mr. Miller being present. But that's exactly right. But here, as I just explained, there was no evidence whatsoever that, in fact, Mr. Miller even had access to the hard drive while these files were put on it. So then the question becomes, how would he have known that these files were on it, given where they were in the unallocated space, these subdirectories within subdirectories? There was no affirmative evidence that he had any idea or even should have, for instance, had any idea that these files were present. And I think that's really a distinguishing characteristic, and that shows why there is something needed beyond mere ownership. Ownership of a computer, as if I was going to purchase a computer from Best Buy, I would not know of all the files on it, and I would not do an investigation of it myself. And I could not be held criminally liable if there happened to be illicit files on there, unless I went on there, found them, and kept them nonetheless. Here, we don't have any evidence that the defendant, Mr. Miller, actually knew of these files, looked at these files, ever accessed these files, or, in fact, that the hard drive in there was the one that he originally put in. In fact, it was evidence to the contrary. This is precisely the circumstance that is contrary to cases such as Fritz, Lanuti, Miliotter of the Fourth Circuit, in which there was affirmative evidence that the defendant had accessed the files, created the files, used the programs that were used to create the files. Nothing of that sort here. All we have is, again, ownership, and that has been said to be insufficient, and it's clearly insufficient in this case. Thank you, Mr. Sorensen. Mr. Cerruti. Mr. Cerruti, I'm sorry to begin this way with a chastisement at speaking. I mean, I can't speak for my colleagues, but I'm sort of shocked and, frankly, disappointed the government. You know, you cite Fritz, right, in your brief. That's a not-precedential opinion from 2011. And the reason I was... And you don't cite Franz, and you don't cite Miller. They are more recent. They are precedential. They seem to be directly on point. You know, what am I missing? Well, the reason I focused on cases like Lanuti, Miltier from another circuit, Fritz, was more because they seemed to go directly to the issues that were raised by Mr. Sorensen in his brief as to what establishes that there may be a sufficient basis for a jury to find knowing possession when you're talking about a situation where, in his case, he's arguing there was access by other individuals. Fritz goes directly to that. Does that mean the United States isn't doing its own independent research? It's just seeing what the blue brief says and then... No, and there is not a time that I don't prepare for oral argument or attend it that I don't have certain regrets about the way things were handled. Clearly, I have regrets about the way this was briefed here. But I am a firm believer in the fact that when you're responding to arguments that are raised by the other side to keep the issues focused on what it is that they're trying to raise, and it appeared to me that Mr. Sorensen was raising on behalf of his client the primary argument that someone else could have done this. And so I honed in on cases that went to the question of whether someone else could have been responsible. I do know that in the Lanuti case, which admittedly is also non-precedential, it does reference factors that go to possession, such as knowing possession, whether images were found on the defendant's computer, which is an ownership question that was just addressed, the number of images that were found. But in terms of legal standards, shouldn't we be applying the Miller factors or no? We enunciated five factors in that case. Well, sure, to the extent that they are found to apply in the circumstances here, and to the extent that they don't necessarily speak to the specifics here of allegations that it was Josh Sprinkle that did this or looking at what the specific facts of the case were, then you look beyond that, of course. And, you know, getting getting to the point that I want to make here, which is, you know, what standard is before this court at this point, and I think the judges, your honors have recognized that here, is that, you know, it's not enough to show that there is just another theory as to who could have done this. Is was there adequate evidence presented in this case? Well, it did more than that. They showed that there was a person that was responsible, not theoretically, not the defendant, but another person. And the only thing that was your and Miller was involved in is he owned the computer. But other than that, there was no proof that he was involved in pornography. And there and there's more than that here. Like what? With there, there is the ownership of the computer, certainly. And that is a huge factor. There is also the fact that, you know, when we look at knowing, there are some of the file names of some of the things that were being downloaded at a time when he was not living with Gilliland. No pony or something like that? That's a different aspect. I'll get to that in a moment. But here we're talking about the November 2013 downloads. And again, for the child pornography, that was the basis of count one. Yes, the examples that were given by Detective Baker were in unallocated space, so there's no dates attached to those. However, for count two, the obscenity, some of the videos, they were not in unallocated space. They were there in the computer. They had a lot of Asian symbols as far as their file names. But then there were other files downloaded or fragments of files downloading or downloaded in November of 2013 that had names attached to them that clearly involved depictions of underage sexual conduct. So you have that which was in allocated space sitting there on the computer, easily accessible. One of those factors. If we want to get into no pony, there is the connection that was drawn and brought law enforcement to this location. And that is that someone using the term no pony had accessed website A, was accessing child pornography. They track that to this location. They go to the location. They conduct a search of the location. They find Mr. Miller. Mr. Miller, who is an acknowledged and admitted brony. No pony is a term that is used amongst those in the community with reference to a specific animated show. And the only child pornography that they find as a result of the search is on his computer, a computer that was in the bottom of his closet that he did not acknowledge was his when he was asked by the special agent, look, what electronics here belong to you? And he names a desktop computer and a tablet. Doesn't mention the laptop that can be looked at as evidence of consciousness of guilt, which is more than just possession or more than just ownership. So you have law enforcement that finds out someone in this apartment using a my little pony term is accessing child pornography on the Internet. They conduct a search. They find Mr. Miller's computer in his room. They find on that search terms. That I get our personal identifiers of Mr. Miller. And or rather about Mr. Sorenson's point about the timing of the hard drive, what's your response to that? Well, the 2013, it had been removed. Well, I know that there was some testimony that one of the witnesses believed that that had been done. The I believe there is testimony from Detective Baker that he didn't find any evidence consistent with the fact that this was a hard drive that was different from that which came with the original computer. The dates, the day of the manufacture of the hard drive, a certain testified to, as well as records that would have been stored on the hard drive, as I understand it, as to exactly when the operating system was first booted up and the user name was entered Uber Elite or Uber 1337. And then that recorded shutdown date, the last recorded shutdown date was then in 2014, the beginning of 2014. That would all could all be taken as being consistent with the fact that there wasn't actually a hard drive replacement, despite Ryan Corr believing that there was. So I think that while there may be evidence on the record that there was. So you're saying that's in dispute? Yes, absolutely. The notion of hard drive replacement? Absolutely. And so, again, that goes to their argument, well, it could have been someone else. It could have been, but that's not the standard that is used on a sufficiency of the evidence challenge before this court. Is it possible to distinguish the evidence with respect to the convictions on possession and receipt? Or the evidence covers receipt as well? I think to the extent that the evidence covers and the government certainly takes the position that it is sufficient to prove possession, that it would have had to have been received at some point as a result of that. It doesn't just we did not charge him with creating this. We do not believe that he created the child pornography that was found on the computer or the obscenity materials. So receipt would necessarily follow from that. And again, we believe the evidence is sufficient to prove possession. There are no other questions. Okay. Thank you, Mr. Cerruti. Rebuttal, Mr. Swanson. Thank you, Your Honor. Would you address that hard drive issue first, if you would like? Absolutely, Your Honor. I think that's a critical point in this particular case. And I think it's critical because the argument I just heard was that there was evidence to show that the hard drive was the same one in the laptop the entire time that Mr. Miller owned it. In fact, I'm not aware of any such evidence. And in fact, Detective Baker, again, the forensic analysis testified quite clearly that he was unsure of that fact, that he had done nothing to confirm, although he could have, or to check that this laptop hard drive had been not replaced, not refurbished. And then, again, you get to the testimony of Ryan Kaur, and you have affirmative testimony. It wasn't, I believe. It was, I know, in 2013 that this hard drive was replaced. I saw it replaced. I saw it come back to Mr. Miller. And then you have the records of Internet usage, the only Internet usage that is tied directly to Mr. Miller, and that's the Firefox Internet browser research appears on page 345. If Kaur's testimony on that is sort of taken as indisputable, what exactly does that mean? Does it mean that when the hard drive was replaced, it came back clean? Do we really know what was on the, you know, I don't know if there are any forensic sort of showing here my lack of knowledge about what happens when someone sends a hard drive out to get replaced. You and me both, Your Honor. But I can explain it the best I know, and based on the evidence that was presented, I think we do know, and it's by the government's own concession and statements. They argue in the forensic report establishes, and that's on page 262 of the appendix, that says that these images, these anime images, the videos, were put on this particular hard drive from 2008 to 2013. Now, before, not after. Now, there are some disputes over the dates, and there was testimony that dates are not certain with respect, but that's what the government said. So we do know, in fact, that when the hard drive was replaced in 2013, again, shown by Ryan Kaur's testimony, shown by the Internet browser usage that starts in 2013. That's the only time it starts for Mr. Miller. So that confirms that he didn't have that hard drive beforehand, and what that shows is that when that hard drive came back from the warranty center, it had not been scrubbed properly. It did not be cleaned of all files. It had been refurbished and then placed within Mr. Miller's computer, at which time it contained these files already. To get to your point, Justice Eureka, that is why the receipt is completely at issue in this case. He did not receive these files. They were on the hard drive when he got it, and he could not be found to possess the files unless he actually knew of the files when they were in that computer, and there is no evidence in the record that he ever accessed any of these files. And, in fact, Detective Baker said that there was no way from these files alone to tell that Mr. Miller had accessed them. That is an absence of evidence, an insufficient evidence. And to get to some of the other points that were raised by Mr. Cerruti, with respect to No Pony, that was a reference. That was, of course, the suspicious website activity that prompted the investigation. It is interesting, though, that when they came to the apartment, Mr. Miller was completely forthright in acknowledging which computers he was using, and he allowed the search that found the laptop, and on the laptop was found no evidence, as the prosecution acknowledged, that Mr. Miller had ever been linked to that name, that he had ever used that account, that he had ever accessed suspicious activity, websites of any sort. Again, an absence of evidence at all that Mr. Miller had any guilty conscience or had ever accessed any inappropriate materials whatsoever. And at that point, the only question is whether there was any other evidence that Mr. Miller had accessed these files or knew about them. There was none. That's why the judgment of conviction on both counts should be reversed. Unless Your Honor has further questions. Thank you, Mr. Schwartz. Thanks, counsel, for argument, and we'll take the matter under advisement. Rear, please.